Scott F. Gibson, #010884
SGibson@DentonPeterson.com

Nathan T. Udall, #034222
Nathan@DentonPeterson.com

**DPD | DENTON PETERSON DUNN**
ATTORNEYS & COUNSELORS AT LAW

1930 N. Arboleda Road, Suite 200
Mesa, Arizona 85213
Telephone: (480) 325-9900
Facsimile: (480) 325-9901
https://arizonabusinesslawyeraz.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Astra Veda Corporation, a Wyoming corporation; Ballistic Barrier Products, Inc., a Delaware Corporation,<br><br>Plaintiffs,<br>vs.<br><br>Disruptive Resources, LLC, a Wyoming limited liability company,<br><br>Defendant. | No. _____<br><br>**COMPLAINT**<br><br>(Declaratory Relief for Patent Invalidity and Declaratory Relief for Non-Infringement)<br><br>Jury Trial Requested |

Plaintiffs Astra Veda Corporation "(Astra Veda") and Ballistic Barrier Products, Inc. ("BBP") submit their Complaint for declaratory relief against Defendant Disruptive Resources, LLC ("Disruptive"):

**Summary of the Case**

1. This case arises under the Declaratory Judgment Act, 28 U.S.C.§ 2201 *et seq.*, and under the patent laws of the United States, 35 U.S.C.§ § 1 *et seq*.

2. Plaintiffs seek a declaration that certain claims of U.S. Patent Number 10,473,437B2 (the "'437 Patent") are invalid. Specifically, Plaintiffs assert that claims 17-24, and 26 of the '437 Patent are invalid because (a) the claimed inventions are described in a

1

printed publication before the filing date of the '437 Patent, and (b) the claimed inventions as a whole would have been obvious to a person having ordinary skill in the relevant art.

3. Defendant Disruptive owns the rights to the technology covered by the '437 Patent.

4. Plaintiff BBP has requested that the United States Patent and Trademark Office conduct an *Ex Parte* Reexamination of Claims 17-24 and 26 of the '437 Patent. That reexamination is pending. The Court should stay these proceedings while the reexamination is pending.

### The Parties

5. Plaintiff Astra Veda is a Wyoming corporation authorized to do business in Arizona.

6. Plaintiff BBP is a Delaware corporation authorized to do business in Arizona.

7. Defendant Disruptive is a Wyoming limited liability company.

### Jurisdiction and Venue

8. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

9. The Court has jurisdiction over the parties.

10. Venue is proper in this District under 28 U.S.C.§ §§ 1391(b)-(c).

11. An immediate, real, and justiciable controversy exists between the parties as to whether Plaintiffs are infringing or will infringe the '437 Patent.

12. An immediate, real, and justiciable controversy exists between the parties as to whether the '437 Patent is invalid.

13. Because this case presents an actual controversy with respect to the enforceability, the non-infringement, and the invalidity of the '437 Patent, the Court may grant the declaratory relief sought under the Declaratory Judgment Act.

**The '437 Patent**

14. The '437 Patent covers certain technologies related to bullet proof window coverings.

15. The '437 Patent is entitled "Bullet Proof Blinds." A copy of the '437 Patent is attached as **Exhibit "A"**.

16. The application for the '437 Patent was filed on September 3, 2014.

17. The '437 claims priority to a provisional application filed on September 3, 2013.

18. The USPTO issued the '437 Patent to John Adrain on November 12, 2019.

19. Mr. Adrain assigned his rights under the patent to Disruptive.

**License Agreement**

20. In early 2021, Disruptive and the shareholders of BBP determined that Astra Veda would license certain bullet resistant technology from Disruptive.

21. Astra Veda and others would then form BBP to develop, manufacture, and sell certain bullet-resistant products.

22. As of March 29, 2021 (the "Effective Date"), Astra Veda licensed certain technology from Disruptive pursuant to a Technology Agreement with Patent & Trademark Licenses (the "License"). **Exhibit "B"** is a copy of the License.

23. Pursuant to the License, Disruptive initially granted Astra Veda the non-exclusive right to use certain technology (the "Technology") and to manufacture and sell Product to purchasers.

24. The licensed Technology includes the '437 Patent.

25. The License contemplated that Astra Veda would manufacture window blinds having anti-ballistic properties as described and claimed in the '437 Patent.

26. The License granted Astra Veda the limited right to use and, upon the satisfaction of certain conditions, sublicense the Technology as part of a license to manufacture, distribute, and sell product based on the Technology.

27. The License further provides that by paying a Conversion Amount, Astra Veda could "convert the limited non-exclusive rights initially granted by the Agreement into a grant 0f certain exclusive rights to manufacture, distribute, and sell Product based thereon to distributors, retailers, installers, and/or consumers." License, Recitals.

28. Upon payment of the Conversion Amount, Astra Veda would acquire the right to issue sublicenses of the Technology.

29. The License defines the Agreement Term as the period of time starting on the Effective Date and continuing until the Agreement "is terminated or canceled or otherwise expires." License, § 1.2(4).

30. Under the License, Astra Veda had the ability to receive certain exclusive rights in the Technology by paying a Conversion Amount. License, ¶ 1.2 (39).

31. The License contemplates that Astra Veda would pay Disruptive a Closing Fee of $2 million in quarterly increments over two years. License, ¶ 3.1.1.

32. The License further provides that "[f]ull payment of the Closing Fee shall be considered payment of the Conversion Amount that is a precondition for the conversion of certain non-exclusive rights into exclusive rights as provided in this Agreement." License, ¶ 3.1.1.

33. Upon payment of the Conversion Amount, Astra Veda's non-exclusive rights to use the Technology and to manufacture and sell Product "shall convert to a grant of an exclusive right to use the Technology, and to manufacture and sell Product to Purchasers." License, ¶ 2.1(b).

**Termination of the License**

34. BBP was formed in May 2021 to serve as the entity that would develop, manufacture, and sell products using the Technology.

35. Astra Veda is one of three shareholders of BBP.

36. BBP began developing and testing anti-ballistic window coverings.

4

37. In the process of developing and testing products, BBP learned of certain European Standards promulgated in 1998 that establish requirements and classifications for bullet resistant windows, doors, shutters, and blinds.

38. The European Standards describe the invention identified in Claims 17-24 and 26 of the '437 Patent.

39. The European Standards invalidate Claims 17-24 and 26 of the '437 Patent.

40. BBP later uncovered additional prior art that invalidated of Claims 17-24 and 26 of the '437 Patent.

41. Because the Claims of the '437 Patent were invalid, the License became financially unviable.

42. Plaintiffs attempted to renegotiate the terms of the License in light of the invalid provisions of the '437 Patent, but Defendant refused to do so.

43. Astra Veda had the right to terminate the License upon providing notice of termination to Disruptive.

44. On September 1, 2021, Astra Veda exercised its contractual right and terminated the License.

45. Despite the termination, Disruptive maintains that Plaintiffs have ongoing obligations under the License.

**Prior Art**

46. The '437 Patent was filed September 3, 2014.

47. The '437 Patent claims priority to a provisional application filed on September 3, 2013.

48. The '437 Patent issued on November 12, 2019.

49. In October 1998, the European Building and Civil Engineering Standards Committee (the "Standards Committee") issued European Standard EN 1522 entitled "Windows, doors, shutters and blinds: Bullet resistance – Requirements and classification" ("European Standards I"). **Exhibit "C"** is a copy of the European Standards I.

50. European Standards I is a printed publication that was available to the public before September 3, 2014.

51. European Standards I qualifies as prior art to the '437 Patent.

52. In August 2002, the Standards Committee issued European Standard EN 12216 entitled "Shutters, external blinds, internal blinds – Terminology, glossary and definitions" ("European Standards II). **Exhibit "D"** is a copy of the European Standards II.

53. European Standards II is a printed publication that was available to the public before September 3, 2014.

54. European Standards II qualifies as prior art to the '437 Patent.

55. On February 7, 1911, the USPTO issued Patent No. 983,663 to F.M. White for a Device for Protection of Display Windows ("White"). **Exhibit "E"** is a copy of the White patent.

56. White is a printed publication that was available to the public before September 3, 2014.

57. White qualifies as prior art to the '437 Patent.

58. On March 7, 1939, the USPTO issued Patent No. 2,149,481 to Edward Van Bosch for an Automatic Shade ("Van Bosch"). **Exhibit "F"** is a copy of the Van Bosch patent.

59. Van Bosch is a printed publication that was available to the public before September 3, 2014.

60. Van Bosch qualifies as prior art to the '437 Patent.

61. On February 23, 1993, the USPTO issued Patent No. 5,188,161 to Gunther Erber for a Louverable Rolling Shutter ("Erber"). **Exhibit "G"** is a copy of the Erber patent.

62. Erber is a printed publication that was available to the public before September 3, 2014.

63. Erber qualifies as prior art to the '437 Patent.

64. On August 17, 1999, the USPTO issued Patent No. 5,939,658 to Elizabeth B. Muller for a Portable Tactical Shield System ("Muller"). **Exhibit "H"** is a copy of the Muller patent.

65. Muller is a printed publication that was available to the public before September 3, 2014.

66. Muller qualifies as prior art to the '437 Patent.

67. On October 9, 2001, the USPTO issued Patent No. 6,298,766 B1 to Uzi Mor for Blast Protection of Curtain Walls ("Mor"). **Exhibit "I"** is a copy of the Mor patent.

68. Mor is a printed publication that was available to the public before September 3, 2014.

69. Mor qualifies as prior art to the '437 Patent.

70. On December 17, 2009, the USPTO published Patent Application No. 12/139,419 submitted by Lawrence Kates for a Motorized Window Shade System and Mount ("Kates"). **Exhibit "J"** is a copy of the Kates application.

71. Kates is a printed publication that was available to the public before September 3, 2014.

72. Kates qualifies as prior art to the '437 Patent.

73. On February 25, 2010, the USPTO published Patent Application No. 12/312,558 submitted by Brian Malcolm Wilkins for a Window and Combined Defence Shutter and Blind ("Wilkins"). **Exhibit "K"** is a copy of the Wilkins application.

74. Wilkins is a printed publication that was available to the public before September 3, 2014.

75. Wilkins qualifies as prior art to the '437 Patent.

76. On April 13, 2010, the USPTO issued Patent No. 7,694,482 B2 to Alan Scott Gazaway for Retrofit Glass Fragment Catching System ("Gazaway"). **Exhibit "L"** is a copy of the Gazaway patent.

77. Gazaway is a printed publication that was available to the public before September 3, 2014.

78. Gazaway qualifies as prior art to the '437 Patent.

79. On July 1, 2010, the USPTO published Patent Application No. 12/688,795 submitted by Douglas R. Domel et al. for an Operating Signal System and Method of Controlling a Motorized Window Covering ("Domel"). **Exhibit "M"** is a copy of the Domel application.

80. Domel is a printed publication that was available to the public before September 3, 2014.

81. Domel qualifies as prior art to the '437 Patent.

82. On February 16, 2021, the USPTO published Patent Application No. 2012/0036988 A1 submitted by Joseph J. Daniels, et al. for a Window Blast Shielding System and Methods Thereof ("Daniels"). **Exhibit "Q"** is a copy of the Daniels application.

83. Daniels is a printed publication that was available to the public before September 3, 2014.

84. Daniels qualifies as prior art to the '437 Patent.

**State Declaratory Action**

85. On May 24, 2022, Astra Veda and BBP filed a declaratory judgment action in Maricopa County Superior Court, Cause No. CV2022-092214 (the "State Court Action"). A copy of the Complaint is attached as **Exhibit "N".**

86. The State Court Action seeks a judicial declaration that the License has been terminated and that Astra Veda and BBP have no further obligations under the License.

87. Astra Veda and BBP filed the State Court Action because Disruptive would not respond to their requests to mediate, arbitrate, or negotiate a resolution of the dispute, as contemplated by the License.

### *Ex Parte* Reexamination

88. On May 24, 2022, BBP filed a Request for *Ex Parte* Reexamination of the '437 Patent ("Request") with the United States Patent and Trademark Office. **Exhibit "O"** is a copy of that Request.

89. The Request identifies eight substantial new questions that challenge the validity of claims 17-24 and 26 of the '437 Patent in light of the prior art:

    a. Patentability of claims 17, 18, 20, and 21 under 35 U.S.C.§ 102 raised by Wilkins;

    b. Patentability of claims 17, 19-24, and 26 under 35 U.S.C.§ 103 raised by of European Standards I in view of European Standards II, and Mor;

    c. Patentability of claims 17, 18, and 20-23 under 35 U.S.C.§ raised by Gazaway in view of Wilkins;

    d. Patentability of claims 17, 19-24, and 26 under 35 U.S.C.§ 103 raised by Domel in view of Mor;

    e. Patentability of claims 17, 18, and 20-23 under 35 U.S.C.§ 103 raised by Van Bosch in view of Wilkins;

    f. Patentability of Claim 24 under 35 U.S.C.§ 103 raised by Kates in view of Daniels;

    g. Patentability of claims 24 and 26 under 35 U.S.C.§ 103 raised by Kates in view of Muller; and

    h. Patentability of claims 17 and 18 under 35 U.S.C.§ 103 raised by European Standards I in view of European Standards II, Mor, and Erber.

90. Each of these substantial new questions identifies prior art that a reasonable examiner would consider important in deciding the claims are not patentable.

**Count 1**
**Declaratory Judgment**
**(Patent Invalidity – 35 U.S.C.§ 102)**

91. Plaintiffs restate the allegations listed above.

92. An actual and substantial controversy has arisen and now exists between the parties concerning the validity of the '437 Patent.

93. 35 U.S.C.§ 102(a)(1) provides that a patent may not issue if "the claimed invention was patented, described in a printed publication . . . or otherwise available to the public before the effective filing date of the claimed invention."

94. Claims 17, 18, 20, and 21 of the '437 are invalid because the claimed invention was described in a printed publication that was available to the public before the effective filing date of the '437 Patent.

95. Plaintiffs are entitled to a judicial declaration that claims 17, 18, 20, and 21 of the '437 Patent are invalid.

**Count 2**
**Declaratory Judgment**
**(Patent Invalidity – 35 U.S.C.§ 103)**

96. Plaintiffs restate the allegations listed above.

97. As actual and substantial controversy has arisen and now exists between the parties concerning the validity of the '437 Patent.

98. 35 U.S.C.§ 103 provides that a patent may not be issued "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art."

99. Claims 17-24 and 26 of the '437 Patent are invalid because the purported invention described in the claims was obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art.

100. Plaintiffs are entitled to a judicial declaration that claims 17-24 and 26 of the '437 Patent invalid.

### Count 3
### Declaratory Judgment
### (Non-Infringement of '437 Patent)

101. Plaintiffs restate the allegations listed above.

102. Plaintiff has a product it has launched or plans to launch within a month. ("Plaintiff's Product") **Exhibit "P"** is a copy of an informational brochure for that Bullet Resistant Window Shade product.

103. 35 U.S.C.§ 271(a) provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States … during the term of the patent therefor, infringes the patent."

104. Claim 24 of the '437 Patent recites:

A blind system comprising: a mounting structure provided near a top of a window frame; a blind configured to hang in a window frame from the mounting structure by suspension and comprising a fabric comprised of a light-weight anti-ballistic material, said blind being configured to have a retracted state allowing light to be transmitted through the window frame, and a protective state with the blind dropping into the window frame for protecting an interior of said structure from penetration by a projectile through the window; and an actuator configured to cause a change in state of the blind from the retracted state to the protective state.

105. Under a broad reading of the patent claim terms of at least claim 24 of the '437 Patent, Plaintiff's Product appears to infringe claim 24 because its parts are similar to the wording used in the claim, such as an upper mounting bar, an anti-ballistic fabric blind material that raises and lowers, and something that causes the blind to raise and lower.

106. However, the wording of claim 24 and others should be interpreted narrowly to not cover an anti-ballistic blind product that includes a manual or a controlled motorized lowering of the blind because of the extent of the prior art and the arguments made during negotiations held between the patent owner and the Patent Office.

107. Among other reasons, Plaintiff's Product does not infringe the '437 Patent because Plaintiff's Product's blinds are lowered either manually or through a controlled lowering of the blinds rather than the blind "dropping" into the window frame to protect an interior in response to an "actuator" causing a change in state of the blind from a retracted to a protective state. Claims 25 and 26 depend from claim 24 and are not infringed for the same reasons claim 24 is not infringed.

108. Patent claims 1-23 each requires a "plurality of rotatable … slats", and Plaintiff's Product does not include rotatable slats.

109. Plaintiffs are entitled to a judicial declaration that Plaintiff's Product does not infringe any claims of the '437 Patent.

## Jury Demand

110. Plaintiffs demand a trial by jury of all issues so triable.

## Prayer for Relief

Plaintiffs request that the Court enter the following relief:

A. Declare that claims 17, 18, 20, and 21 of the '437 Patent are invalid because the claimed invention was described in a printed publication that was available to the public before the effective filing date of the '437 Patent;

B. Declare that claims 17-24 and 26 of the '437 Patent are invalid because the purported invention described in the claims was obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art;

C. Declare that this case is exceptional under 35 U.S.C.§ 285 and award Plaintiffs their attorneys' fees, costs, and expenses incurred in this case;

D. Award Plaintiff any other appropriate relief.

\\\…\\\

DATED May 25, 2022.

          **DENTON PETERSON, P.C.**

          /s/ Scott F. Gibson
            Scott F. Gibson
            Nathan T. Udall
            1930 N. Arboleda Road, Suite 200
            Mesa, AZ  85213
            Attorneys for Plaintiffs